UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| GENERAL DYNAMICS ELECTRIC BOAT CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:24-00387-WGY |
| MICKEY SKOBIC and JOANNE SKOBIC, | ) ) ) | |
| Defendants. | ) ) | |

YOUNG, D.J.[1]                                    March 24, 2026

**MEMORANDUM OF DECISION AND ORDER**

In accordance with the Court's April 22, 2025 order, ECF No. 70, the motion to dismiss, ECF No. 19, was **ALLOWED** in part, only as to the fraudulent concealment portions of counts I and II as to both defendants and **DENIED** in part, as to the rest of the motion.  Currently pending before the Court is the Defendants, Mickey Skobic and Joanne Skobic's ("the Skobics") motion for reconsideration (ECF. No. 86), which for the reasons stated below is hereby **DENIED**.

I.    **INTRODUCTION**

A.    **The False Claims Act Action**

84Partners LLC filed a complaint in this Court against General Dynamics Electric Boat Corporation ("Electric Boat") and

---

[1] Of the District of Massachusetts, sitting by designation.

1

Newport News Shipbuilding as a qui tam relator under the False Claims Act. Compl. ¶ 2, Ex. 1, Am. Compl. Violations of False Claims Act ("FCA Complaint") ¶ 1, ECF No. 1-2. The Skobics, the Defendants here, are members of 84Partners LLC. FCA Complaint ¶ 13. The FCA Complaint alleged that Electric Boat and Newport News Shipbuilding installed parts on Navy vessels that do not comply with their contracts with the United States. Id. ¶ 2. The FCA Complaint was dismissed, and the dismissal affirmed on appeal, because the complaint "fail[ed] to allege with particularity the actual presentation or payment of a false claim." United States ex rel. 84Partners, LLC v. Nuflo, Inc., 79 F.4th 1353, 1363 (11th Cir. 2023); Compl. ¶ 3, ECF No. 1.

B.   **The Instant Action**

In the present case, Electric Boat strikes back. The Court has subject matter jurisdiction over the claim arising under 18 U.S.C. § 1964 pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Electric Boat's state law claims because they arise from the same common nucleus of operative fact as the claim arising under federal law, pursuant to 28 U.S.C. § 1367.

2

**C.    Procedural History – the Skobics' Decided Motion to Dismiss and Pending Motion for Reconsideration**

**1.    The Skobics' Motion to Dismiss.**

The Skobics moved to dismiss Electric Boat's complaint, arguing that it fails to meet the pleading standard for fraud under Federal Rule of Civil Procedure 9(b) and fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mickey Joanne Skobic's Mot. Dismiss. Gen. Dynamics Electric Boat Corp.'s Compl. ("Defs.' Mot. Dismiss") 2, 5, 10, ECF No. 19.

The Court held a hearing on the Skobics' motion to dismiss on April 22, 2025, and promptly issued an order ALLOWING the motion to dismiss as to Fraudulent Concealment alleged in Counts I and II, and DENYING the motion as to all other counts.  Minute Entry, ECF No. 70.

**2.    The Skobics' Motion for Reconsideration**

The Skobics moved to reconsider this order. ECF No. 86. The motion is fully briefed.  See Pl. Gen. Dynamics Elec. Boat Corp.'s Opp'n Defs.' Mot. Reconsideration Ct.'s Partial Denial Defs.' Mot. Dismiss Inc. Mem. Law, ECF No. 89; Defs.' Reply Supp. Mot. Recons., ECF No. 93.

For the reasons set forth below, the Court fully explains its reasoning for its rulings on the motion to dismiss, and for those same reasons the motion for reconsideration is **DENIED.**

3

## II.  FACTS ALLEGED

This recitation is drawn from Electric Boat's complaint as well as 84Partners LLC's <u>qui</u> <u>tam</u> (both original and amended) FCA Complaint against Electric Boat.  Compl. ¶ 2; FCA Complaint ¶¶ 1, 13.  Although "Electric Boat does not have personal knowledge of certain allegations" it "relies on the Skobics' own allegations and admissions in the FCA Amended Complaints."  Compl. ¶ 4 n.1.

> **A.  The Skobics Worked for Nuflo, Which Supplied Parts for the Nuclear Submarines That Electric Boat Built for the Navy.**

Electric Boat builds nuclear submarines for the Navy.  <u>Id.</u> ¶ 1.  The Skobics worked for Nuflo, Inc. ("Nuflo"), which supplies "pipe fittings and similar parts" to Electric Boat so that it can build the Navy's nuclear submarines.  <u>Id.</u> ¶¶ 1-2.  "Electric Boat sometimes purchased Nuflo parts from another corporation, Synergy Flow Systems" ("Synergy Flow").  <u>Id.</u> ¶ 1.  Electric Boat incorporated the Navy's required specifications into its purchase orders with Nuflo.  <u>Id.</u> ¶ 39-41.

The Navy's specifications "permitted welding only on certain types of materials, limited welding to certain parameters, required preapproval for welds by Electric Boat, and restricted welding to qualified personnel using qualified procedures."  <u>Id.</u> ¶ 41.  Welds also had to be documented.  <u>Id.</u> ¶ 42.

4

Nuflo employees had to "execute certifications attesting—under penalty of law—that the parts 'have been manufactured in accordance with all applicable specifications and purchase order requirements.'" Id. ¶ 43. "The certifications and the other documents required to be delivered to Electric Boat with the parts are together known as the 'certification package.'" Id. ¶ 44.

**B.    Mr. Skobic Performed Nonconforming Welds at the Direction of His Supervisors at Nuflo.**

The Skobics "each knew that Navy specifications and Electric Boat's purchase orders prohibited weld-repairs unless Nuflo had received all required preapprovals and unless the weld-repairs were properly documented." Id. ¶ 69. The Skobics also "each knew that Nuflo certified compliance with [the] specifications and requirements when Nuflo delivered parts to Electric Boat." Id. ¶ 70.

Mr. Skobic was "responsible for carrying out undocumented and unauthorized weld-repairs; he determined how to 'disguise' those weld-repairs; he falsified records by failing to disclose weld-repairs when required; and he was part of a core group of conspirators . . . who executed the scheme to deliver and conceal nonconforming parts to Electric Boat." Id. ¶ 74. Mrs. Skobic also agreed to join the scheme. Id. Electric Boat alleges that "John Licausi (Nuflo's president), Ryan Licausi (a

production manager who also served as an inspector), Steve Cefalu (a Nuflo quality manager), Chris Moore (another quality manager), and Tommy Connor (a shop foreman), as well as [Synergy Flow]" were co-conspirators (the "Alleged Co-Conspirators") alongside the Skobics.  Id. ¶ 75.

Some of the Alleged Co-Conspirators "would ask [Mr. Skobic] to perform weld-repairs, and he would carry out those weld-repairs, even though he knew they were 'illegal[]' under the governing specifications and purchase orders."  Id. ¶ 76 (quoting FCA Compl.) (alteration in original).  Mr. Skobic understood his welds were not done according to the required specifications evidenced by a journal he kept while working at Nuflo.  Id. ¶ 80.  Mr. Skobic disguised his illegal welds by "polishing, buffing, and grinding [which] rendered [the] weld-repairs invisible to the naked eye and undetectable during routine inspection."  Id. ¶ 82.  Mr. Skobic also did not document many of his repairs.  Id. ¶ 84-85.

The certification packages corresponding to the nonconforming parts and welds "falsely certified the parts as conforming and did not disclose the weld-repairs."  Id. ¶ 87. The Skobics and the Alleged Co-Conspirators allegedly "caused [Synergy Flow] to enter into contracts with Electric Boat, and then [Synergy Flow] 'knowingly' made 'false certification[s]' of conformance to Electric Boat."  Id. ¶ 89 (citation omitted).

6

Electric Boat alleges that Synergy Flow "was created by individuals including the [Alleged] Co-Conspirators." Id. ¶ 88.

Electric Boat's complaint provides specific examples of specific nonconforming welds that Mr. Skobic performed. Id. ¶¶ 92-97, 100-105, 109-113, 116-120.

### C. The Skobics Falsely Certified the Nonconforming Parts as Conforming.

Mr. Skobic "was one of the Nuflo inspectors who sometimes conducted liquid penetrant inspection testing and who completed and signed liquid penetrant test reports." Id. ¶ 54. Mrs. Skobic also "completed and initialed the first piece inspection report." Id. ¶ 59. Electric Boat relies on the accuracy of Nuflo's certification packages. Id. ¶¶ 63-66.

Mr. Skobic "fraudulently completed and signed liquid penetrant testing [("Liquid Testing")] inspection reports on parts he knew had been weld-repaired without disclosing the repairs." Id. ¶ 124. He "knew that the [Liquid Test] inspection reports he completed and signed were included in certification packages sent to Electric Boat." Id. ¶ 126. The Liquid Testing reports "designated the weld-repaired parts 'ACCEPT'" regardless of their nonconformance. Id. ¶ 129.

Electric Boat also alleges that the Alleged Co-Conspirators did not properly train employees on the inspection protocols, "'gave unqualified, untrained employees the answers to . . .

7

certification tests[,]" and "regularly . . . used uncalibrated gages in [their] inspection[s]." Id. ¶ 136-37 (alterations in original).

Mrs. Skobic "was [allegedly] one of the fraudulently-certified inspectors," and "perform[ed] various quality inspections, even though she was not properly certified." Id. ¶¶ 143-144 (internal quotations omitted). Mrs. Skobic "intentionally changed heat treatment numbers and/or had contemporaneous knowledge of other inspectors doing so." Id. ¶ 145. The Navy's inspection requirements "disallow undocumented changes to heat treatment numbers." Id. ¶ 142.

Mrs. Skobic designated the improperly welded parts "as 'SAT' —— meaning satisfactory -- as to 'Visual,' 'Visual and Dimensional,' and 'Marking,' the last of which she understood as indicating that the heat treatment numbers recorded for the parts were accurate and had not been altered." Id. ¶ 146. Mrs. Skobic's inspection forms, and the heat numbers on those forms, were part of the certification package to Electric Boat. Id. ¶ 147.

> **D.  Electric Boat Alleges that the Skobics Had to Report
> Their Fraudulent Activity, but They Did Not, Injuring
> Electric Boat.**

Electric Boat claims that the Skobics "each had a duty to report the unlawful activity they knew about or suspected." Id. ¶ 154. "Electric Boat Specification 2678 [("Specification

8

2678")], which Electric Boat's purchase orders to Nuflo incorporated by reference, specifies that employees of Electric Boat suppliers, like Nuflo, who are 'aware of, or hav[e] reason to suspect, malpractice or fraud & falsification,' must report it." Id. ¶ 155 (alterations in original). Electric Boat alleges the Skobics' duty to report comes from Specification 2678, "the training they received on its requirements, and the notices posted at Nuflo facilities." Id. ¶ 160. Regardless, the Skobics "each continued to hide their misconduct and the misconduct of the [Alleged] Co-Conspirators." Id. ¶ 163.

Electric Boat also alleges that the Skobics hid their misconduct and the Alleged Co-Conspirator's misconduct "intend[ing] to manufacture a False Claims Act lawsuit against Nuflo, Electric Boat, and NNS––so that they could obtain not just the income they received as Nuflo employees, but the 30% bounty the FCA can award to relators." Id. ¶ 165. Mr. Skobic "kept a journal memorializing his and the [Alleged] Co-Conspirators' misconduct beginning in May 2006 and continuing through October 2013." Id. ¶ 166. The Skobics "hid the journal and continued to build their purported FCA lawsuit so that, when the opportunity arose, they might profit from the fraud in which they participated." Id. ¶ 168.[2]

---

[2] Mr. "Skobic's 'journal reflects at least 190 specific instances on distinct dates' in 'July 2006 through October 2013'

Nuflo provided the noncomplying parts to Electric Boat. Id. ¶ 173. "As a result[,] . . . Electric Boat has had to undertake, at great expense, an intensive investigation and major remediation effort to identify, segregate, re-test, and otherwise address Nuflo's nonconforming parts." Id. ¶ 174. "Electric Boat had to hire an additional workforce of fulltime inspectors, who had to use costly and specialized tests to search for and identify otherwise invisible and undocumented weld-repairs." Id. ¶ 176.

## III. ANALYSIS

### A. Pleading Standard

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts draw "all reasonable inferences" in favor of the plaintiff, St. George v. Pinellas City, 285 F. 3d 1334, 1337 (11th Cir. 2002), but disregard "conclusory allegations, unwarranted deductions of facts or legal

---

of the [Alleged] Co-Conspirators 'direct[ing]' him to perform weld-repairs, and [Mr.] Skobic performing those repairs." Compl. ¶ 77.

conclusions masquerading as facts." Oxford Asset Mgmt., Ltd v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

When pleading fraud, plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

"Pleading a fraud claim with particularity means 'identifying the who, what, when, where, and how of the fraud alleged.'" Datum Software, Inc. v. Citizant, Inc., No. 23-12538, 2024 WL 3719111, at *5 (11th Cir. Aug. 8, 2024) (quoting Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F. 4th 1298, 1307 (11th Cir. 2022)). The complaint must demonstrate:

> "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

Id. (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006)).

### B.   The FCA and Florida's Anti-SLAPP Statute Do Not Bar Electric Boat's Recovery.

A counterclaim by "an FCA defendant which requires for its success a finding that the FCA defendant is liable is . . .

11

barred by the FCA." Singbush v. Florida Neurological Center, LLC, No. 5:19-CV-603-PGB-PRL, 2021 WL 3082750, at *2 (M.D. Fla. June 7, 2021) (Byron, J.) (quoting United States ex rel. Miller v. Bill Harbert Int'l Const., Inc., 505 F. Supp. 2d 20, 28 (D.D.C. 2007)); Mortgages, Inc. v. United States Dist. Ct. Dist. Nev., 934 F.2d 209, 213 (9th Cir. 1991) ("The FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands.'"); United States v. Omnicare, Inc., No. 07 C 05777, 2013 U.S. Dist. LEXIS 102543, *58-59 (N.D. Ill. July 23, 2013). When counterclaims are "independent from the underlying [qui tam] claim, it can proceed because it is not dependent on the defendant's [FCA] liability." U.S. ex rel. Vainer v. DaVita, Inc., No. 1:07-CV-2509-CAP, 2013 WL 1342431, at *4 (N.D. Ga. Feb. 13, 2013) (quoting U.S. ex rel. Madden v. Gen. Dynamics Corp., 4 F.3d 827, 830-31 (9th Cir. 1993)).

Congress chose not to allow counterclaims by FCA defendants against qui tam relators for their own wrongdoing because it would discourage relators from reporting misconduct. U.S. ex rel. Miller, 505 F. Supp. 2d at 26. Congress's intention "to not allow counterclaims [is] supported by the fact that Congress did choose to include explicit provisions for reducing the award of a wrongdoing relator and otherwise acknowledging his

12

misdeeds, but with the benefit redounding to the government, not to the other wrongdoers." Id.

Electric Boat's claims here are independent from the Skobics' FCA claims because for Electric Boat's claims to be successful, the Court does not have to find it liable under the FCA.

The FCA requires that defendants "knowingly" commit a fraud. 31 U.S.C. §§ 3729(a)(1)(A), (B). Electric Boat alleges that it did not know the Skobics' certifications were false or that the welded parts were nonconforming to the Navy's standards. Compl. ¶¶ 87, 150, 174, 183. If Electric Boat did not know the parts were nonconforming, then it could not have "knowingly" committed a fraud against the Navy. Thus, Electric Boat could not be liable for the Skobics' FCA claims and still be successful here.[3] Electric Boat's complaint does not implicate the public policy concerns of discouraging relators from reporting fraud as described in Miller and Singbush.

Florida's anti-SLAPP statute also does not bar Electric Boat's recovery. The anti-SLAPP statute prevents plaintiffs from filing "any lawsuit . . . against another person or entity

---

[3] The Skobics' FCA complaints have been dismissed for failure to state a claim. Compl. ¶¶ 2-3; United States ex. rel. 84partners, LLC v. Huntington Ingalls Indus., No. 3:14-CV-1256-TJC-PDB, 2021 WL 4307510 (M.D. Fla. Sept. 22, 2021) (Corrigan, J.), aff'd sub nom. United States ex rel. 84Partners, LLC v. Nuflo, Inc., 79 F.4th 1353 (11th Cir. 2023).

13

without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. § 768.295(3). Bringing a lawsuit can be considered protected speech under the First Amendment. See Slane v. City of Sanibel, No. 2:15-cv-181-FtM-38CM, 2015 U.S. Dist. LEXIS 93157, at *18-19 (M.D. Fla. July 17, 2015) (Chappell, J.).

Electric Boat filed the present suit based on the Skobics' alleged facts in the FCA complaint. Compl. ¶ 4 n.1. This does not mean, however, that Electric Boat filed its complaint because the Skobics were exercising a free speech right. Electric Boat alleges that it filed the current lawsuit because it "cannot let fraud of this nature in its supply chain go unaddressed" and "[f]ailing to hold the Skobics accountable for their behavior would undermine the strict quality assurance programs in nuclear submarine manufacturing that are necessary to provide the Navy and its sailors with safe ships." Id. ¶ 3.

The Court is required to take Electric Boat's allegations as true at this stage. Therefore, the Court accepts that Electric Boat did not file its complaint because of the Skobics' protected speech, rather, Electric Boat filed suit to prevent future fraud and keep sailors safe. Questioning Electric Boat's alleged motive for filing the complaint is not proper at the

14

motion to dismiss stage because the complaint is adequately pled.

Also, as explained below, Electric Boat's claims have merit, and thus Florida's Anti-SLAPP statute is not applicable.

**C.    None of Electric Boat's Claims are Time Barred at this Stage.**

The Eleventh Circuit explains that "dismissal on statute-of-limitations grounds is proper only where it is 'apparent from the face of the complaint that the claim is time-barred.'" Wainberg v. Mellichamp, 93 F.4th 1221, 1224 (11th Cir. 2024) (quoting La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)). "Generally, an issue as to the statute of limitations is not resolvable on a motion to dismiss and is an issue of fact for the jury." Kaplan v. Volvo Penta of the Americas, LLC, No. 14-22226-CIV, 2014 WL 6908423, at *2 (S.D. Fla. Dec. 8, 2014).

**1.    Electric Boat's Claims Based on Fraud (Counts I Through IV), the Federal RICO Statute, and Florida's RICO Statute (Count VI) Are Not Time Barred at This Stage.**

In Florida, "[a] legal or equitable action founded on fraud" must be brought within four years." Fla. Stat. § 95.11(3)(i). The time to file for actions based on fraud starts to run "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a).

15

Florida Courts "have historically applied the discovery rule, as an equitable exception to the standard accrual rule, in actions that sound in fraud." Fedance v. Harris, 1 F.4th 1278, 1285 (11th Cir. 2021). Under the discovery rule "the limitations period [begins] on the date the plaintiff discovered or should have discovered the cause of action." MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co., 43 F.4th 1259, 1265 (11th Cir. 2022).

Florida's Civil Remedies for Criminal Practices Act (Count IV) has a statute of limitations of five years and follows the same discovery rule as the fraud claims. Fla. Stat. § 772.17; Jones v. Childers, 18 F.3d 899, 908-909 (11th Cir. 1994) (applying the discovery rule to the Florida Civil Remedies for Criminal Practices Act) (rev'd on other grounds).

Similarly, civil remedies for federal RICO violations are subject to a four-year statute of limitations that and also follow the discovery rule. Agency Holding Corp v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 152 (1987) (four-year statute of limitations); Bowling v. Founders Title Co., 773 F.2d 1175, 1178 (11th Cir. 1985) (applying the discovery rule to federal civil RICO cases).

The parties executed a Tolling Agreement providing that the "applicable statutes of limitation or statutes of repose for the Claims Against the Skobics shall be suspended and tolled from

16

July 10, 2020." Compl., Ex. 4, Tolling Agreement ¶ 3 ("Tolling Agreement"), ECF No. 1-5. The Tolling Agreement, however, does not revive any claims that were time-barred before July 10, 2020. Tolling Agreement ¶¶ 3-4.

Electric Boat's claims are not apparently time barred from the face of the complaint. The Skobics' cited news articles and annual report do not specifically identify what Electric Boat knew or what it did reasonably to investigate the alleged fraud. See generally, Defs.' Mot. Dismiss, Ex. 1, Decl. Jennifer M. Verkamp Supp. Defs.' Mot. Dismiss, ECF No. 19-1. Also, the Skobics' FCA action was filed under seal and Electric Boat alleges that it did not know that the Skobics were the ones who filed the FCA Complaint until January 31, 2020. Pl. Gen. Dynamics Elec. Boat Corp.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") 6, ECF No. 22; Defs.' Mot. Dismiss 8; Compl. ¶ 20.

The Skobics' statute of limitations arguments require factual support not found in the allegations on the face of the complaint. The motion to dismiss stage is not the proper place to resolve factual disputes about Electric Boat's knowledge of the Skobics' actions and/or the reasonableness of its investigation. Thus, the Court rejects the Skobics' statute of limitations defense at this time.

17

### 2. Electric Boat's Tortious Interference Claim (Count VII) Is Not Time Barred at This Stage.

Tortious interference with a contract claim must be brought within four years after the final elements occur.  Fla. Stat. § 95.11(3); Fla. Stat. § 95.031(1); see Crossdale v. Burandt, No. 2:13-cv-877-FtM-29MRM, 2015 U.S. Dist. LEXIS 133993, at *12 (M.D. Fla. Oct. 1, 2015) (Steele, J.) (stating that "[t]he statute of limitations for a tortious interference with contract claim is four years" (citing Palaxar Grp., LLC v. Williams, No. 14-CV-758-ORL-28GK, 2014 WL 5059286, at *7 n.17 (M.D. Fla. Oct. 2, 2014) (Antoon, J.)).

The Skobics' statute of limitations defense to tortious interference is unfit for a decision at the motion to dismiss stage because it requires the Court to make a factual determination about when Electric Boat received the nonconforming parts.

The elements of tortious interference are: "(1) a contract exists; (2) the defendant knew about the contract; (3) the defendant intentionally procured a breach of the contract; (4) there is no justification or privilege for the breach; and (5) the plaintiff suffered damages from the breach." Diamond Resorts Int'l, Inc. v. Aaronson, 371 F.Supp.3d 1088, 1113 (M.D. Fla. 2019) (Dalton, J.) (citing Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1321 (11th Cir. 1998)).

First, Electric Boat alleges element one, that it had a contractual relationship with the Navy since around 1998. Compl. ¶ 31.  Second, Electric Boat alleges that the Skobics knew about its contracts with the Navy since 2006 because they were incorporated into Electric Boat's purchase agreements with Nuflo, and Mr. Skobic purposefully documented his nonconforming welds in a journal.  Id. ¶¶ 39-41, 164-68.

The timing of the third and fourth elements, breach and harm, are less clear.  The Skobics began providing the nonconforming parts beginning in 2005.  Id. ¶¶ 4-6, 73-74.  Mr. Skobic stopped working for Nuflo in October 2014, and Mrs. Skobic stopped working at Nuflo in October 2015.  Id. ¶¶ 11-12. These facts suggest a conclusion that the Skobics could not have produced or falsely certified any parts to Electric Boat after October 2015.

Electric Boat alleges, however, that Nuflo "sometimes manufactured more parts than an Electric Boat purchase order required" and "retained such excess parts (and their corresponding certification packages . . . ) for years after the parts were manufactured before sending them to Electric Boat." Id. ¶ 36.  Therefore, whether Electric Boat received the parts and sent them to the Navy within the limitations period is a factual issue that is unfit for decision at the motion to dismiss stage.

The Court thus rejects the Skobics' statute of limitations defense at this stage.

**D.    Electric Boat Properly States a Claim as to All Counts, Except for Fraudulent Concealment in Counts I and II.**

Rule 12(b)(6) requires a complaint to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Claims for fraud must comply with Rule 9(b) by stating "with particularity the circumstances constituting fraud or mistake," which is done by "identifying the who, what, when, where, and how of the fraud alleged."  Fed. R. Civ. P. 9(b) (first quotation); Datum Software, Inc. v. Citizant, Inc., No. 23-12538, 2024 WL 3719111, at *5 (11th Cir. Aug. 8, 2024) (quoting Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F.4th 1298, 1307 (11th Cir. 2022)) (second quotation).

**1.    Counts I and II: Electric Boat States a Claim for Fraud, but Not Fraudulent Concealment.**

Common-law fraud has five elements:

(1) a false statement of fact;
(2) known by the person making the statement to be false at the time it was made;
(3) made for the purpose of inducing another to act in reliance thereon;
(4) action by the other person in reliance on the correctness of the statement; and
(5) resulting damage to the other person.

Clark v. Ashland, Inc., No. 2:13-cv-794-FtM-29MRM, 2017 U.S. Dist. LEXIS 15119, at *38 (M.D. Fla. Feb. 3, 2017) (Steele, J.) (citing Gandy v. Trans World Comput. Techn. Grp., 787 So. 2d

20

116, 118 (Fla. 2d DCA 2001)) (formatting adjusted); McTurk v. Lottery.com, Inc., No. 24-60993-CIV, 2025 WL 587060, at *7 (S.D. Fla. Feb. 24, 2025) (quoting Med-Stop, Inc. v. Vandutch, Inc., No. 23-cv-21875, 2025 WL 26731, at *8 (S.D. Fla. Jan. 3, 2025)).

Electric Boat satisfies element one because it alleges that the Skobics made false statements of fact when they certified parts as proper while knowing they did not conform to the Navy's standards. Compl. ¶¶ 124-30, 144-47.

Electric Boat meets element two because it alleges that Mr. and Mrs. Skobic both knew their inspection statements were false. Mr. Skobic designated nine parts as "ACCEPT," but knew those parts were nonconforming because he improperly welded them that day. Id. ¶¶ 131-33. Mrs. Skobic also designated parts as satisfactory while knowing the heat treatment numbers were altered. Id. ¶¶ 145-46.

Electric Boat's complaint meets element three because it alleges the Skobics made the false reports for the purpose of inducing Electric Boat to accept the parts. Id. ¶¶ 133, 150, 190-91.

Electric Boat's complaint satisfies element four because it alleges that Electric Boat acted in reliance on the Skobics' false statements when accepting the parts. Id. ¶¶ 133-34, 150, 183-84, 192.

21

Electric Boat meets element five because it suffered damages from accepting the fraudulently certified parts as it had to undertake "an intensive investigation and major remediation effort to identify, segregate, re-test, and otherwise address Nuflo's nonconforming parts." Id. ¶¶ 173-75.

Electric Boat thus adequately pleads its allegations as to fraud for count I and II.

Electric Boat fails, however, to State a Claim for fraudulent concealment as to both counts.

Fraudulent concealment requires:

(1) [defendant] concealed or failed to disclose a material fact;
(2) [defendant] knew or should have known the material fact should be disclosed;
(3) [defendant] knew their concealment of or failure to disclose the material fact would induce the plaintiffs to act;
(4) [defendant] had a duty to disclose the material fact; and
(5) the plaintiffs detrimentally relied on the misinformation.

Hess v. Philip Morris USA, Inc., 175 So.3d 687, 691 (Fla. 2015) (formatting adjusted); Philip Morris USA Inc. v. Principe, 337 So.3d 821, 827 n.7 (Fla. Dist. Ct. App. 2021) (citing R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010)).

Electric Boat meets elements one, three, and five for the same reasons it properly alleges common law fraud. Electric Boat also properly alleges element two. Electric Boat fails,

22

however, to allege element four -- that the Skobics had a duty to disclose the material fact.

Electric Boat properly pleads element two, that the Skobics knew or should have known the material fact should have been disclosed.  Electric Boat alleges that Mr. Skobic failed to disclose the nonconforming parts in his Liquid Testing reports and "knew that the specifications imposed by [the Navy] and by Electric Boat's purchase orders required that, to be conforming, weld-repairs had to be preapproved by Electric Boat and properly documented and disclosed."  Compl. ¶¶ 180-81.  Mr. Skobic knew he had to disclose the nonconforming parts to his employer, Nuflo.

Electric Boat alleges Mrs. Skobic knew she had to disclose the altered heat treatment numbers.  Id. ¶¶ 187-88.  Mrs. Skobic "knew . . . that the specifications imposed by [the Navy] and by Electric Boat's purchase orders prohibited undocumented changes to heat treatment numbers and required that weld-repairs be disclosed to Electric Boat."  Id. ¶ 189.  Electric Boat properly alleged that both Mr. and Mrs. Skobic knew that they had to disclose a material fact.

Whether the Skobics had a duty to disclose their fraudulent certifications to **Electric Boat,** rather than to Nuflo, is less clear, and Electric Boat has not properly pleaded duty, element four.  Fraudulent concealment requires that the defendant had a

23

"duty to speak" in relation to the concealed material fact.

Jerue v. Drummond Co., No. 8:17-cv-587-EAK-AEP, 2018 U.S. Dist. LEXIS 228329, *40 (M.D. Fla. Apr. 19, 2018) (Kovachevich, J.).

> A duty to speak may arise when
>
> (1) one party to a transaction who speaks has a duty to say enough to prevent his words from misleading the other party;
> (2) one party to a transaction who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party; or
> (3) one party to a transaction who stands in a confidential or fiduciary relation to the other party has a duty disclose material facts.

Id. at *40-41 (citing Regions Bank v. Kaplan, 258 F. Supp. 3d 1275, 1292 (M.D. Fla. 2017) (Kovachevich, J.)).

A party has a duty to disclose when they have "information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them." Temurian v. Piccolo, No. 18-cv-62737, 2019 U.S. Dist. LEXIS 67469, at *18 (S.D. Fla. Apr. 19, 2019) (quoting Barnes v. Burger King Corp., 932 F. Supp. 1420, 1429-30 (S.D. Fla. 1996)). Fiduciary duties are "expressly created . . . by contract, such as principal/agent or attorney/client, or through legal proceedings, such as trustee/beneficiary and guardian/ward." Kaplan, 258 F. Supp. 3d at 1293. Fiduciary relations may be "implied in law when 'confidence is reposed by one party and a trust accepted by the other.'" Id. (quoting Capital Bank v.

24

MVB, Inc., 644 So.2d 515, 518 (Fla. 3d D.C.A. 1994)); Greenberg v. Miami Children's Hosp. Research Inst., 264 F. Supp. 2d 1064, 1071 (S.D. Fla. May 29, 2003).

Electric Boat has not properly alleged that the Skobics had a duty to disclose the fraudulent welds to it. The Skobics did not owe Electric Boat any fiduciary duty (or any other).

Electric Boat alleges that its purchase orders with Nuflo incorporated by reference Specification 2678, and that Specification 2678 imposed a duty to disclose on Nuflo's employees. Compl. ¶¶ 155-56. The Skobics, however, had no duty to disclose because Specification 2678 was incorporated in the purchase agreements between Electric Boat and Nuflo, and the Skobics were not a party to that transaction. Id. ¶¶ 155-56. In other words, the Skobics had no contractual duty to report their alleged misconduct, because Nuflo was the contracting party. Id.; Defs.' Mot. Dismiss 15.

Electric Boat also fails to allege that the Skobics had an implied duty to disclose the nonconforming parts to it. Electric Boat does not allege that it placed confidence in the Skobics specifically or that the Skobics accepted its trust. Therefore, the Skobics owed no duty to disclose to Electric Boat.

25

2.    **Count III: Electric Boat States a Claim for Civil Conspiracy.**

Civil conspiracy requires "(1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." Coursen v. JP Morgan Chase & Co., No. 8:12-CV-690-T-26EAJ, 2013 WL 5437348, at *10 (M.D. Fla. June 25, 2013) (citing Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putman County, 616 So. 2d 562, 565 (Fla. Dist. Ct. App. 1993)), aff'd sub nom. Coursen v. Shapiro & Fishman, GP, 588 F. App'x 882 (11th Cir. 2014); see also Gordon v. Bethel, 359 So.3d 802, 810 (Fla. Dist. Ct. App. 2023) (citing Walters v. Blankenship, 931 So. 2d 137, 140 (Fla. 5th DCA 2006)).

Electric Boat satisfies elements one and two because it alleges that the Skobics and Alleged Co-Conspirators had an agreement to produce nonconforming welds and to defraud Electric Boat by producing false certifications. Id. ¶¶ 75-78, 144-47, 150, 209-10. Electric Boat properly alleges the Skobics acts were unlawful because it properly alleges its fraud claim. See McTurk, 2025 WL 587060, at *7 ("Because civil conspiracy alone is not an independent tort, Plaintiffs must properly allege the elements of civil conspiracy **and** the elements of common law

26

fraud in order to state an actionable claim . . . .") (emphasis in original).

Electric Boat properly alleges element three because it alleges that the Skobics each committed an overt act in furtherance of the conspiracy. Electric Boat alleges that Mr. Skobic agreed to perform the nonconforming welds and fraudulent Liquid Tests, while Mrs. Skobic altered heat treatment numbers and incorrectly marked on inspection forms that the parts were satisfactory. Id. ¶¶ 73-77, 128-29, 133, 145-46, 166, 225.

Electric Boat alleges element four because it alleges that the Skobics' conduct caused it damages. Id. ¶¶ 173-75.

The Skobics argue that "[a] corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Defs.' Mot. Dismiss 17 (quoting McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000)).

If the defendants are not acting as a "single legal entity," however, then the intra-corporate conspiracy doctrine does not bar the plaintiff's claims. See Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 768 (11th Cir. 2000); Sturmanskie LLC v. Picturemaxx Ag, No. 1:21-CV-21091, 2022 WL 3030451, at *15-16 (S.D. Fla. July 5, 2022) ("[T]he only possible way for Plaintiff to state a viable conspiracy claim would be its allegations that [the corporate agent defendants] conspired with

27

[the potential buyer].”), <u>report and recommendation adopted,</u> No. 21-21091-CIV, 2022 WL 3028072 (S.D. Fla. Aug. 1, 2022); <u>Jackman v. 20th Jud. Cir. Ct. Admin.,</u> No. 219CV828FTM38MRM, 2020 WL 7711112, at *1 (M.D. Fla. Dec. 29, 2020) (Chappell, J.) (Plaintiff “points to new evidence of Defendants conspiring with people outside their governmental entity.  This is important because the intra-corporate conspiracy doctrine does not apply at all in that circumstance.”).  Electric Boat alleges that Synergy Flow, a separate legal entity, was part of the conspiracy.  Compl. ¶¶ 88-91.  Thus, the intra-corporate conspiracy doctrine does not apply because the defendants were not all acting as a single legal entity.

Accordingly, the Court concludes that Electric Boat adequately pleads its claim for civil conspiracy.

### 3.    Count IV: Electric Boat States a Claim for Aiding and Abetting Fraud.

Florida Courts have not “explicitly recognized a cause of action for aiding and abetting fraud, [but] Florida courts have assumed that the cause of action exists.” <u>Chang v. J.P.Morgan Chase Bank, N.A.,</u> 845 F.3d 1087, 1097 (11th Cir. 2017) (citing <u>ZP No. 54 Ltd. P'ship</u> v. <u>Fid. & Deposit Co. of Md.,</u> 917 So.2d 368, 371-72 (Fla. Dist. Ct. App. 2005)).  A claim for aiding and abetting fraud requires “(1) the existence of ‘an underlying fraud’; (2) that ‘[t]he defendant had knowledge of the fraud’;

and (3) that '[t]he defendant provided substantial assistance to advance the commission of the fraud.'" Id. at 1097 (quoting ZP No. 54 Ltd. P'ship, 917 So.2d at 372); Kaplan v. Regions Bank, No. 8:17-CV-2701-CEH-CPT, 2023 WL 2610155, at *7 (M.D. Fla. Mar. 23, 2023) (Honeywell, J.).

Electric Boat properly alleges fraud by the Alleged Co-conspirators at Nuflo and thus meets element one. Electric Boat alleges that the Alleged Co-Conspirators directed Mr. Skobic to perform the nonconforming welds, then certified them as conforming in their certification packages to induce Electric Boat to accept the parts. Compl. ¶¶ 77, 81, 87, 98, 106, 114, 121.

Electric Boat properly alleges element two because it properly alleges Mr. Skobic knew about the fraud because he performed many of the nonconforming welds. E.g., id. ¶¶ 92-98, 100-06, 109-14. Mrs. Skobic also knew about the fraud because the Alleged Co-Conspirators gave her answers to the inspector certification test, and then she went on to improperly change heat treatment numbers and certify nonconforming parts as satisfactory. Id. ¶¶ 87, 136, 143-47.

Electric Boat properly alleges element three because it alleges that the Skobics provided substantial assistance to the fraud. Mr. Skobic signed off on Liquid Testing reports for parts he knew were nonconforming and produced nonconforming

29

welds.  Id. ¶¶ 77, 124, 128.  It is also alleged that Mrs. Skobic also substantially participated in the fraud, because she knowingly certified nonconforming parts as satisfactory and changed heat treatment numbers.  Id. ¶¶ 145-46.

Electric Boat thus properly states a claim that the Skobics aided and abetted fraud.

### 4.   Counts V and VI: Electric Boat States a Claim Under the Federal RICO Statute and Florida RICO Statute.

Florida's Civil Remedies for Criminal Practices Act ("Florida RICO Statute") is interpreted the same as a federal RICO claim.  Catano v. Capuano, No. 18-20223-CIV, 2019 WL 3890343, at *5 (S.D. Fla. May 28, 2019) ("A Florida RICO claim is examined in the same way as a federal RICO claim."); Jackson v. Bell South Telecomms., 372 F.3d 1250, 1263-64 (11th Cir. 2004) ("We have explained that interpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute . . . on which [the Florida RICO statute] is patterned.") (internal quotations omitted).  As such, the two claims are analyzed together.

For a civil plaintiff to recover for a RICO claim, they must "plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the

30

business or property of the plaintiff." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020); see also Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348 (11th Cir. 2016).

Electric Boat properly alleges element one, that the Skobics operated an enterprise. The defendants do not need to "have a formal position in or be in the upper management of the enterprise and 'RICO liability is not limited to those with primary responsibility for the enterprise's affairs.'" Jeremiah's Int'l Trading Co. v. Calderone, No. 8:14-CV-584-T-27TGW, 2014 WL 12526282, at *2 (M.D. Fla. Oct. 29, 2014) (Whittemore, J.) (quoting Reves v. Ernst & Young, 507 U.S. 170, 184 (1993)).

Electric Boat alleges that Mr. Skobic knowingly performed nonconforming welds, and the Alleged Co-Conspirators "sent to Electric Boat, via a commercial shipping company (such as YRC or UPS), the certification packages corresponding to the parts they were delivering that falsely certified the parts as conforming and did not disclose the weld-repairs." Compl. ¶¶ 74, 77, 80, 87. Mrs. Skobic signed off on reports she knew had altered heat treatment numbers and nonconforming parts at the direction of the Alleged Co-Conspirators. Id. ¶¶ 143-47, 210.

Electric Boat properly alleges element two, that the Skobics acted as part of an enterprise. A criminal enterprise under RICO "includes an association-in-fact, defined as having

31

'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associations to pursue the enterprise's purpose.'" United States v. Graham, 123 F. 4th 1197, 1277 (11th Cir. 2024) (quoting Boyle v. United States, 556 U.S. 938, 946 (2009)).

Electric Boat alleges that Nuflo was an enterprise under RICO, but it is not. Compl. ¶ 253. Electric Boat does not allege that Nuflo's purpose was to conduct mail fraud or any type of fraud. Rather, the complaint suggests that Nuflo's purpose was to sell conforming parts to Electric Boat, and the Skobics thwarted that purpose. Id. ¶¶ 31-38. Electric Boat alleges, in fact, that another company bought Nuflo, and that company continues to sell Electric Boat parts. Id. ¶¶ 37-38.

Electric Boat also alleges, however, an "Alternative Enterprise" comprising the Skobics and Alleged Co-Conspirators that meets element two. Id. ¶ 226. The Alternative Enterprise was created "for a common purpose of engaging in a course of conduct, namely inducing Electric Boat . . . to accept and pay for nonconforming parts." Id. Mr. Skobic acted as the welder who created the nonconforming parts, then he himself, Mrs. Skobic, or the other Alleged Co-Conspirators signed off on reports certifying the parts as conforming with the required specifications. Id. ¶¶ 228-30. The Alternative Enterprise also had the longevity to pursue its purpose because the Alternative

32

Enterprise's fraudulent activity began around 2006 and lasted until around 2013.  Id. ¶¶ 73, 151, 166, 233, 244.

Electric Boat also meets elements three and four, that the Alternative Enterprise operated through a pattern of racketeering activity including at least two predicate acts.

Electric Boat alleges that the Alternative Enterprise engaged in mail fraud under 18 U.S.C. § 1341.  Id. ¶¶ 237-42. Electric Boat alleges the Skobics' participation in the fraud because Mr. Skobic intentionally welded nonconforming parts and submitted false Liquid Testing reports.  Compl. ¶¶ 92-123, 128-133.  Electric Boat also alleges that Mrs. Skobic submitted false reports.  Id. ¶¶ 146-150.  The Skobics' false testing reports were sent in the mail to Electric Boat along with the fraudulently certified parts.  Id. ¶¶ 237-39.

The Skobics argue that "RICO liability on broad and unspecified assertions of mail or wire fraud, are particularly suspect."  Defs.' Mot. Dismiss 21.  But Electric Boat alleges mail fraud with sufficient particularity as to both the Skobics. "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  In re Takata Airbag Prods. Liab. Litig., 396 F. Supp. 3d 1101, 1159 (S.D. Fla. 2019) (internal citations and quotations omitted).

33

To satisfy the Rule 9(b) standard, Electric Boat "must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud,'" and the "particular facts with respect to each defendant's participation in the fraud." Id. at 1159 (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Electric Boat alleges the precise statements made because it alleges that the Skobics fraudulently signed certification reports and created the nonconforming parts certified by themselves and the Alleged Co-Conspirators. Compl. ¶¶ 128-133, 228-30, 237-38. Electric Boat's allegations identify the type of reports that the Skobics fraudulently completed, the first piece inspection forms and Liquid Testing Reports, and their other fraudulent activity, altering the heat treatment numbers and performing the nonconforming welds. Id. ¶¶ 145-47. The false certifications led Electric Boat to accept the parts when it otherwise would not have. Id. ¶¶ 133, 240. The Skobics benefitted from sending the false certifications because they got their "salar[ies,] and continued employment—and . . . continu[ed] to develop the FCA complaint [they] intended to file against Nuflo, Electric Boat, and NNS." Id. ¶ 241.

34

Electric Boat has properly pleaded elements five and six because it alleges that the Skobics' RICO activities caused it an injury.  The Skobics's fraudulent reports caused Electric Boat to accept nonconforming parts and Electric Boat later had to undertake an investigation to identify the parts.  Compl. ¶¶ 66, 87, 133, 150, 173-77.

Thus, Electric Boat adequately pled counts V and VI.

### 5.    Count VII: Electric Boat States a Claim for Tortious Interference.

Tortious interference with a contract requires "(1) a contract exists; (2) the defendant knew about the contract; (3) the defendant intentionally procured a breach of the contract; (4) there is no justification or privilege for the breach; and (5) the plaintiff suffered damages from the breach." Diamond Resorts Int'l, Inc. v. Aaronson, 371 F.Supp.3d 1088, 1113 (M.D. Fla. 2019) (Dalton, J.) (citing Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1321 (11th Cir. 1998)).

Electric Boat properly alleges element one, that a contract exists.  Electric Boat alleges that it "has constructed and delivered Virginia-class nuclear submarines pursuant to contracts with the Navy." Compl. ¶ 31.

Electric Boat properly alleges element two, that the Skobics knew about the contract because the Navy's requirements for the parts were incorporated into Electric Boat's purchase

35

agreements with Nuflo, and Mr. Skobic documented knowingly his nonconforming welds. Id. ¶¶ 39-41, 164-66. Mrs. Skobic also knew about the Navy's specifications to complete her inspections. Paragraphs 1, 4, 164-70, and 281 of the complaint allege their knowledge, with paragraph 281 being the most direct allegation in that regard.

Electric Boat properly alleges element three, that the Skobics intentionally procured its breach of contract with the Navy. Electric Boat alleges that Mr. Skobic knew his welds were nonconforming and that he documented their nonconformance in a journal between around 2005 to 2013. Id. ¶¶ 77-80, 151, 166. Mrs. Skobic "completed first piece inspections for parts that . . . she knew were nonconforming as a result of improper and undocumented weld-repairs, the use of unqualified inspectors, or altered heat treatment numbers." Id. ¶ 146.

Electric Boat meets element four because the Skobics do not have a justification for the breach. The Skobics argue that they cannot be liable for tortious interference because they are not a disinterested third party; the Skobics argue that "a subcontractor to an entity that contracts with the Government cannot, as a matter of law, be held liable for tortiously interfering with a contract in which the subcontractor also has rights and obligations." Defs.' Mot. Dismiss 24 (citing

36

Oceguera v. Alutiiq Sec. & Tech., LLC, No. 10-22220-CIV, 2010 U.S. Dist. LEXIS 104783, at *12-13 (S.D. Fla. Oct. 1, 2010)).

Subcontractors are not liable for tortious interference when at the time of the interference, the subcontractor is a party to the relationship. Oceguera, 2010 U.S. Dist. LEXIS 104783, at *12-13. "Under Florida law, a person with 'any beneficial or economic interest in, or control over,' a contractual relationship is not considered a 'stranger' to the contract and therefore has a 'privilege to interfere' in that relationship." M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni, 982 F.3d 1333, 1339 (11th Cir. 2020) (quoting Hamilton v. Suntrust Mortg. Inc., 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014). Nuflo is an interested third-party because it is not a party to Electric Boat's contracts with the Navy but does benefit from the contract as a subcontractor. Compl. ¶¶ 31, 172, 278, 285; FCA Complaint ¶ 2; Pl.'s Opp'n 19.

An Agent of a party "to the business relationship cannot be held liable for tortious interference if he was acting within his capacity and scope as an agent . . . ." SIG, Inc. v. AT & T Digital Life, Inc., 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013). An exception to this rule occurs "[w]hen an agent acts 'solely with ulterior purposes' and in a manner that is 'detriment[al]' to his principal's best interest, the agent can [then] be treated as a stranger to the contract and thereby held liable

37

for tortious interference." CM Ent., Inc. v. Diaz World Trade Grp., Inc., No. 22-23189-CV, 2024 WL 3360450, at *11 (S.D. Fla. May 22, 2024), report and recommendation adopted sub nom. MCM Ent., Inc. v. Diaz World Trade Grp., Inc., No. 22-CV-23189, 2024 WL 3455544 (S.D. Fla. July 17, 2024), clarified on denial of reconsideration, No. 22-CV-23189, 2025 WL 81596 (S.D. Fla. Jan. 13, 2025).

Agents of interested third parties can be liable for tortious interference with their employer's contract when acting to their employer's detriment, outside the scope of their agency. See M & M Realty Partners at Hagen Ranch, LLC, 982 F.3d at 1339-40 (holding that the improper means doctrine, which allows parties to take action to protect their financial interests so long as they do not employ improper means, applies to interested third parties).

The Skobics can be liable for tortious interference because they acted outside the scope of their employment with Nuflo and to Nuflo's and Electric Boat's detriment. The Skobics allegedly signed off on fraudulent tests, and Mr. Skobic produced fraudulent welds. Id. ¶¶ 77-80, 128-29, 144-47. The Skobics' allegedly knowingly producing the nonconforming welds and falsely signing off on reports is not part of their employment with Nuflo. Rather, Nuflo's main purpose was to provide conforming parts to the Navy, and Nuflo employed the Skobics to

38

accomplish that purpose.  Id. ¶¶ 77-80, 151, 166.  Thus, the Skobics acted outside the scope of their employment.

Electric Boat meets element five because it properly alleges that it suffered damages because it had to undertake an investigation to identify and correct the nonconforming parts. Id. ¶¶ 173-177.

In sum, Electric Boat adequately pled its tortious interference claims.

## IV.  CONCLUSION

In accordance with the Court's order on April 22, 2025, the motion to dismiss was **ALLOWED** in part and **DENIED** in part.  The motion was allowed as to fraudulent concealment portions of counts I and II as to both defendants, and the rest of the motion was denied.  The motion for reconsideration (ECF. No. 86) is hereby **DENIED**.

**SO ORDERED.**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.